**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| v. | **CAUSE NO. 3:11-CV-302-CWR-LRA** |
| **THE BRYAN COMPANY, ET AL.** | **DEFENDANTS** |

**ORDER**

Pending before the Court is defendant Stephen G. Hill's motion to dismiss the cross-claim of defendants The Bryan Company; Bryan Construction Company, Inc.; Steve Bryan; Mid-South Houston Partners; Mid-South Development, LLC; The Vineyards Apartments, LLC; Equity Properties, LLC; and Cypress Lake Development, LLC (together, "the Bryan Defendants"). Docket No. 76. The Bryan Defendants oppose the motion, Docket No. 160, Hill has replied, Docket No. 168, and the matter is ready for review. The motion will be granted.

I.   *Factual and Procedural History*

This is a Fair Housing Act ("FHA") and Americans with Disabilities Act ("ADA") enforcement action brought by the United States Department of Justice against a variety of developers, architects, civil engineers, and owners of apartment complexes. Docket No. 1. The United States alleges that the defendants violated the FHA when they designed and built nine multifamily residential apartment complexes in Mississippi, Louisiana, and Tennessee. *Id.* at 3-5, 24-28. It further claims that eight of those complexes were designed and constructed in violation of the ADA. *Id.* at 24-28.

The complaint specifically alleges that the nine complexes are not fully accessible to persons with disabilities, because portions of the properties lack accessible parking, accessible pedestrian routes, properly-sloped ramps, accessible thermostats, accessible electrical outlets, accessible light switches, usable doors, usable bathrooms, usable kitchens, adequate maneuvering clearance, and accessible door hardware, among other things. *Id.* at 17-24.[1] The United States contends that the defendants' acts establish a pattern or practice of willfully denying rights to persons protected by

---

[1] The United States does not claim that all of these issues exist at every apartment complex; this list is a compilation of the violations described in the complaint.

federal law. *Id.* at 28-29. It seeks declaratory, injunctive, and monetary relief. *Id.* at 29-34.

The Bryan Defendants, who collectively were the owners, contractors, or developers of all of the complexes, *id.* at 5-16, filed a cross-claim against 11 co-defendants, including Stephen Hill, an architect who worked on five of the apartment complexes, *id.* at 10-16. Docket No. 69, at 16-19. The cross-claim asserts that if the Bryan Defendants are held liable in any way for the violations described in the United States' complaint, then Hill *et al.* are responsible for satisfying the Bryan Defendants' judgment. *Id.* at 18.

Hill's motion to dismiss argues that the FHA and ADA preempt the Bryan Defendants' cross-claim for indemnification. Docket No. 77, at 3-6 (quoting *Equal Rights Center v. Niles Bolton Assoc.*, 602 F.3d 597 (4th Cir. 2010)). Reciting the Fourth Circuit's reasoning, he contends that the FHA and ADA are regulatory and nondelegable, and that compliance with them would be lacking if a violating developer could seek indemnification from an architect. *Id.* at 5.

The Bryan Defendants deny that they seek indemnity and instead characterize their cross-claim as one for "contribution and/or reimbursement." Docket No. 161, at 2, 7.[2] They argue that the FHA and ADA do not expressly preempt contribution claims and that implied preemption is disfavored. *Id.* at 3-6. The Bryan Defendants disagree that contribution claims weaken FHA and ADA compliance, asserting that such claims "compliment the provisions of the FHA because they encourage contractors or developers to take proactive steps to correct or address any possible violations," and suggest that Hill is himself seeking "blanket immunity." *Id.* The Bryan Defendants also attempt to distinguish the Fourth Circuit case – which is "non-binding authority," they emphasize – as a narrow decision on indemnity, not contribution. *Id.* at 7. In the alternative, they claim they "should be allowed to amend their cross-claim to clarify their contribution claims, if necessary." *Id.* at 8.

In rebuttal, Hill suggests that amendment would be futile, Docket No. 168, at 2 & n.2, because the federal courts to address the issue have also found contribution claims preempted by the FHA, *id.* at 5. Perhaps responding to the charge that his motion to dismiss sought blanket immunity,

---

[2] Under the Local Rules, the Bryan Defendants' response was due on January 5, 2012. That date came and went without a response or a motion for additional time. Months later, on its own motion, the Court granted the Bryan Defendants until March 12 to respond. *See* Text-Only Order of March 2, 2012. But their response brief was still filed late, on March 13, without any explanation and more than three months after its original due date.

he maintains "that liability for FHA violations rests on all wrongful participants, with each party to bear his proportionate fault. . . . [T]he Bryan Defendants would only be liable for the acts they wrongfully participated in." *Id.* at 6. He concludes with an argument that the Bryan Defendants' indemnity claim based on violations of the ADA is also preempted. *Id.* at 6-9.

II.   *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of actions that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's claims must be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

"[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation marks and citation omitted). Where "the complaint itself establishes the applicability of a federal-preemption defense," though, "the issue may properly be the subject of a Rule 12(b)(6) motion." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (citation omitted).

III.  *Discussion*

   A.   *What Did The Bryan Defendants Request?*

The Court will first resolve whether the Bryan Defendants' cross-claim sought indemnity or contribution, since the two theories are distinct.

> Indemnity and contribution, although related concepts, are distinguishable. When a trial court applies indemnity principles, it permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss. When the trial court applies contribution principles, it requires that each tortfeasor pay the proportion of the damages attributable to its actions.

*Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 829-30 (5th Cir. 1992) (citing Prosser & Keeton on The Law of Torts § 50, at 336-41 (5th ed. 1984)).

The Bryan Defendants' cross-claim stated that if they were liable to the United States "for any reason, to any extent, or in any manner, which the Bryan Defendants deny, then the named

3

Defendants as set forth in the Plaintiff's Complaint, along with unnamed Defendants, are liable to the Bryan Defendants for any <u>and all</u> of the Plaintiff's claims for any <u>and all</u> types of relief in any <u>and all</u> such amounts . . . ." Docket No. 69, at 18 (emphasis added). The repeated use of the word "all" supports that the Bryan Defendants sought to shift all of their potential liability to others. This is a claim for indemnification, *Hardy*, 949 F.2d at 829-30, notwithstanding contrary assertions in the Bryan Defendants' response brief.

      B.      *Whether The FHA and ADA Preempt Indemnification Actions*

           1.      Law

It is well-established that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quotation marks and citations omitted). Congress's intent to preempt "can take multiple forms," *Castro v. Collecto, Inc.*, 634 F.3d 779, 785 (5th Cir. 2011), as described here:

> Congress can expressly preempt state law in federal statutory language, or it can impliedly preempt state law. Implied preemption can take the form of field preemption, where federal law is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation, or the federal interest in the field is so dominant that it precludes enforcement of state laws on the same subject. Implied preemption can also take the form of conflict preemption: (1) where complying with both federal law and state law is impossible; or (2) where the state law creates an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* (quotation marks, citations, and brackets omitted).

Conflict or obstacle preemption, which is the precise issue in our case, applies when "the imposition of state standards would conflict with federal law and interfere with federal objectives." *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004); *see also City of Morgan City v. S. Louisiana Elec. Co-op. Ass'n*, 31 F.3d 319, 322 (5th Cir. 1994) ("state law is nonetheless preempted if its application would disturb, interfere with, or seriously compromise the purposes of the federal statutory scheme. In other words, an application of state law that would frustrate the purpose of a federal statutory scheme is preempted.") (citations omitted). A state common law tort action may be preempted. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 865 (2000).

There is a traditional 'presumption against preemption.' *See Levine*, 555 U.S. at 565. Its practical application was called into question earlier this year, though, when the Fifth Circuit

4

reviewed recent Supreme Court decisions and concluded that "whatever value or relevance a presumption against preemption of state tort law should play is uncertain." *Lofton v. McNeil Consumer & Specialty Pharma.*, 672 F.3d 372, 378 (5th Cir. 2012). It continued, "[t]he presumption, in other words, might be said to be tied to the courts' ultimate preemption decision. Even with the benefit of *Levine* and *PLIVA*, this court is unable to assess the current scope or existence of the presumption against preemption." *Id.* at 379.

"The party asserting federal preemption has the burden of persuasion." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) (citations omitted).

        2.        Analysis

Again, the question in our case is whether state law indemnification claims "would conflict with federal law and interfere with federal objectives." *Witty*, 366 F.3d at 384. The parties submit that this is a novel question in this district and that the Fourth Circuit is the only federal appellate court to have ruled on the issue. *See Equal Rights Center*, 602 F.3d at 598. Accordingly, many of the arguments turn on the parties' interpretation of the Fourth Circuit's decision.

Before getting too far into the merits of *Equal Rights Center*, however, the Bryan Defendants argue that the case is non-binding and "provides little, if any, support to Hill's position." Docket No. 161, at 7. As will become apparent, the latter contention is incorrect. And although it is true that Fourth Circuit decisions are not binding in this judicial district, an "informed person" would expect this court "to look to the opinions of other circuits for persuasive guidance, always chary to create a circuit split." *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 363 (5th Cir. 2009) (citation omitted). That is because, as the Fifth Circuit has explained,

> the law rules best by being predictable and consistent. It is predictability that enables people to plan their investments and conduct, that encourages respect for law and its officials by treating citizens equally, and that enables an adversary to settle conflict without going to court in the hope of finding judges who will choose a favored result.

*Id.* In short, it is entirely appropriate to consider the persuasive guidance contained in *Equal Rights Center*. *See also United States v. Tadlock*, 399 F. Supp. 2d 747, 751 (S.D. Miss 2005) (where an issue has not been addressed by the Fifth Circuit, the district court "look[s] to persuasive guidance from other jurisdictions").

In *Equal Rights Center*, an owner/developer of multifamily housing complexes, an architect,

and others in the construction industry were sued for violating the accessibility provisions of the FHA and ADA at 71 apartment buildings. *Equal Rights Center*, 602 F.3d at 598-99. The owner entered into a consent decree with the plaintiffs that required retrofitting the buildings and payment of $1.4 million in damages and fees. *Id.* at 599. The architect entered into a separate consent decree with the plaintiffs. *Id.* The owner then sued the architect for indemnification, breach of contract, and negligence, focusing on an indemnity clause in their contract. *Id.* The owner sought indemnification for the retrofitting of and damages related to the 15 (out of 71) properties that the architect had designed, plus "*all*" related settlement amounts, costs, and attorney's fees paid to the plaintiffs. *Id.* at 600. Before trial, the owner was denied leave to add a contribution claim. *Id.*

The district court and the Fourth Circuit granted the architect summary judgment, concluding that all of the owner's claims were preempted by the FHA and ADA. *Id.* First, the FHA and ADA were more regulatory than compensatory, since they contained "a clear and comprehensive national mandate" to end discrimination on the basis of disability. *Id.* at 602. "Furthermore, compliance with the ADA and FHA, as conceded by [the owner], is nondelegable in that an owner cannot insulate himself from liability for discrimination in regard to living premises owned by him and managed for his benefit merely by relinquishing the responsibility for preventing such discrimination to another party." *Id.* (quotation marks, citation, and ellipses omitted). As a result, "the regulatory purposes of the FHA and ADA would be undermined by allowing a claim for indemnity." *Id.*

The reasoning of *Equal Rights Center* applies to our case in full. An indemnification claim in this context would frustrate, "disturb, interfere with, or seriously compromise the purposes of the" FHA and ADA. *Morgan City*, 31 F.3d at 322; *see Witty*, 366 F.3d at 384. The Bryan Defendants cannot shift to their architect all of the liability they may have for building inaccessible housing. If Hill drew up inaccessible building plans and the Bryan Defendants failed to correct them at some point before or during construction, both sides may have exposure under the FHA and ADA. *E.g.*, *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 3 F. Supp. 2d 661, 665 n.2 (D. Md. 1998) ("For example, if an architect draws up plans with noncomplying entrance ways, and a builder follows the plan resulting in a covered dwelling with an inaccessible entranceway, both entities would be liable as both were wrongful participants").

Dismissal of the Bryan Defendants' cross-claim is consistent with similar decisions from

other courts.  As one district court wrote, the federal courts to consider this issue

> are in universal agreement that there is no express or implied right to indemnity or contribution under the FHA or ADA.  *See Quality Built Constr., Inc.*, 309 F. Supp. 2d at 778-779 (applying *Northwest Airlines, Inc. v. Transportation Workers of Am.*, 451 U.S. 77 (1981)); *United States v. Shanrie Co.*, 610 F. Supp. 2d 958, 960-961 (S.D. Ill. 2009); *Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 421-423 (E.D.N.Y. 2009); *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F. Supp. 2d 814, 821-822 (D. Md. 2009); *Sentell v. RPM Mgt. Co.*, 2009 WL 2601367 at *4 (E.D. Ark. Aug. 24, 2009); *Gambone Bros. Dev. Co.*, 2008 WL 4410093 at *7-9; *Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condominium*, 2007 WL 633951 at *6-7 (S.D.N.Y. Feb. 26, 2007).  Further, as the district court noted in *Quality Built Constr.*, 309 F. Supp. 2d at 779, there is nothing in the legislative history of the FHA which states or implies such a right to contribution or indemnity.  The comprehensive character of the FHA precludes a finding that a federal common law right to indemnity and/or contribution exists under the FHA.  *Mathis*, 607 F. Supp. 2d at 423.  Likewise, there is no right to indemnity and/or contribution under the ADA.  *Equal Rights Ctr.*, 603 F. Supp. 2d at 822.

*United States v. Murphy Dev., LLC*, No. 3:08-960, 2009 WL 3614829, *1 (M.D. Tenn. Oct. 27, 2009); *see also Miami Valley Fair Hous. Ctr., Inc. v. Steiner + Assoc., Inc.*, No. C-3:08-CV-150, 2010 WL 2630672, *1 (S.D. Ohio June 28, 2010) ("the Fair Housing Act . . . does not contain or authorize clams for indemnifications and/or contribution"), *vacated and remanded on other grounds*, 2012 WL 1815964 (6th Cir. May 18, 2012).

The Bryan Defendants assert, though, that allowing their indemnification claim "would actually advance and promote one of the fundamental goals of the FHA, which is self-testing and self-correction to address any possible violations."  Docket No. 161, at 6.  They have not explained their theory, which seems unlikely.  If developers and owners knew they could shift liability for FHA and ADA violations to architects, they would have little incentive to self-test to discover potential violations during the planning and construction phases.  The "proactive steps" the Bryan Defendants seek are more likely encouraged by widespread knowledge that developers and owners remain independently responsible for compliance with federal law, and they should therefore check their architects' and contractors' work before and during construction.  The Fourth Circuit also disagreed with the Bryan Defendants' argument:

> Allowing an owner to completely insulate itself from liability for an ADA or FHA violation through contract diminishes its incentive to ensure compliance with discrimination laws.  If a developer of apartment housing, who concededly has a

> non-delegable duty to comply with the ADA and FHA, can be indemnified under state law for its ADA and FHA violations, then the developer will not be accountable for discriminatory practices in building apartment housing. Such a result is antithetical to the purposes of the FHA and ADA.

*Equal Rights Center*, 602 F.3d at 602.

The Bryan Defendants further contend that preempting their indemnity claim would effectively constitute a grant of "blanket immunity" to architects. Docket No. 161, at 6. But Hill's briefing acknowledges that he is responsible for his own violations of the FHA and ADA, if any. Docket No. 168, at 6. The Bryan Defendants' contention is a reversal of reality: it is they who seek blanket immunity through their demand for indemnification, not the other way around.

For these reasons, the Bryan Defendants may not maintain their cause of action for indemnification.

### C.   *Leave to Amend*

As a final matter, the Bryan Defendants' response brief asserts that they "should be allowed to amend their cross-claim to clarify their contribution claims, if necessary." Docket No. 161, at 8. The request will be denied for two reasons.

First, the Bryan Defendants failed to file a motion seeking leave to amend within the time authorized by this Court's Case Management Order. They were put on notice of an arguable deficiency in their cross-claim on December 22, 2011, when Hill's motion to dismiss was filed, and could have moved to amend until June 1, 2012, this Court's deadline. *See* Case Management Order, Docket No. 123. They have not shown good cause for receiving leave to amend at this late juncture. *See Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (affirming denial of motion for leave to amend filed after the scheduling order's deadline).

In addition, even if the Court were to overlook the lack of a formal motion, the Bryan Defendants failed to attach a proposed amended cross-claim indicating the desired changes. Nor have they explained how an amended cross-claim would "clarify" their position. The Fifth Circuit has held that a party's failure to attach a copy of her proposed amendment should not "defeat her right to amend" when she has "made clear the substance of her proposed amendment . . . in her supporting memorandum." *Zaidi v. Ehrlich*, 732 F.2d 1218, 1220 (5th Cir. 1984). Here, where neither an attachment nor an explanation of the amendment's substance has been provided, leave

to amend will be denied.

*IV.*     *Conclusion*

Hill's motion to dismiss the Bryan Defendants' cross-claim is granted.

SO ORDERED, this the 6th day of June, 2012.

>               s/ Carlton W. Reeves
>               UNITED STATES DISTRICT JUDGE