UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:11-cv-302-CWR-LRA |
| | ) |
| THE BRYAN COMPANY, | ) |
| BRYAN CONSTRUCTION COMPANY, INC., | ) |
| STEVE BRYAN, | ) |
| MID-SOUTH HOUSTON PARTNERS, | ) |
| MID-SOUTH DEVELOPMENT, LLC A/K/A | ) |
| MSD, LLC, | ) |
| THE VINEYARDS APARTMENTS, LLC, | ) |
| EQUITY PROPERTIES, LLC F/K/A | ) |
| WINDSOR LAKE APARTMENT, LP, | ) |
| CYPRESS LAKE DEVELOPMENT, LLC, | ) |
| STEPHEN G. HILL, PICKERING FIRM, INC. | ) |
| A/K/A PICKERING, INC., LARRY SINGLETON | ) |
| D/B/A SINGLETON HOLLOMON | ) |
| ARCHITECTS, | ) |
| H D LANG AND ASSOCIATES, INC., | ) |
| RICHARD A. BARRON, ARCHITECT, | ) |
| SHOWS DEARMAN & WAITS, INC., | ) |
| TIMOTHY R. BURGE, P.A. D/B/A | ) |
| PROFESSIONAL ASSOCIATES, INC., | ) |
| CANIZARO CAWTHON DAVIS F/K/A | ) |
| CANIZARO TRIGIANI ARCHITECTS, | ) |
| SMITH ENGINEERING & SURVEYING, INC. | ) |
| A/K/A SMITH ENGINEERING FIRM, INC. | ) |
| A/K/A S.E.C.O., INC. D/B/A SMITH | ) |
| ENGINEERING CO., INC., | ) |
| EVANS GRAVES ENGINEERS, INC. and | ) |
| J.V. BURKES & ASSOCIATES, INC. | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| USA HOUSTON LEVEE, DST, THE | ) |
| VINEYARDS AT CASTLEWOODS, LLC, | ) |
| SEC ACCOMMODATOR-WINDSOR LAKE | ) |

LLC, MID-AMERICA CAPITAL PARTNERS,   )
MID-AMERICA APARTMENTS, L.P.,   )
SEC ACCOMMODATOR-TWIN OAKS LLC,   )
OAK HOLLOW-NE LP,   )
SEC ACCOMMODATOR-SPRING LAKE LLC,   )
CYPRESS LAKE RS, LLC,   )
CYPRESS LAKE GARG, LLC, and   )
PELICAN POINTE-NE LP,   )
   )
                    Rule 19 Defendants.   )
_____)

## CONSENT ORDER BETWEEN PLAINTIFF UNITED STATES AND DESIGN PROFESSIONAL DEFENDANTS

## I.   INTRODUCTION

### A.  Background

1.  Plaintiff United States of America and Defendants Stephen G. Hill, Pickering Firm, Inc. a/k/a Pickering, Inc., Larry Singleton d/b/a Singleton Hollomon Architects, H D Lang and Associates, Inc., Richard A. Barron, Architect, Shows, Dearman & Waits, Inc., Canizaro Cawthon Davis f/k/a Canizaro Trigiani Architects, Evans Graves Engineers, Inc. and J.V. Burkes & Associates, Inc. (hereinafter collectively referred to as the "Design Professional Defendants")  agree to the terms of this Partial Consent Order resolving all allegations raised in the United States' Complaint involving the Design Professional Defendants.  This Partial Consent Order resolves only the claims of the United States against the Design Professional Defendants.

2.  With respect to the Design Professional Defendants, this action was brought by the United States to enforce the provisions of Title VIII of the Civil Rights Act of 1968 ("the Fair Housing Act" or "FHA"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619.  Specifically, the United States' Complaint alleges that the Design Professional

Defendants have engaged in a pattern or practice of discrimination against persons with disabilities and have denied rights to a group of persons because of disability by failing to design and construct the following eight (8) covered multifamily dwellings (hereinafter collectively referred to as the "Subject Properties," and individually referred to as "Subject Property") with the features of accessible and adaptable design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3)(C) of the FHA, 42 U.S.C. § 3601(f)(1), (2) & (3)(C).

    a.   **Subject Properties --** Name, Address, Number of Covered Multifamily Dwellings

        i.    Houston Levee Apartments ("Houston Levee"), 9940 Paddle Wheel Drive, Cordova, Tennessee  38016, 96;[1]

        ii.    The Vineyard at Castlewoods Apartments ("Vineyard"), 1000 Vineyard Drive, Brandon, Mississippi  39047, 104;[2]

        iii.    Windsor Lake Apartments ("Windsor Lake"), 100 Windsor Lake Boulevard, Brandon, Mississippi  39042, 112;[3]

        iv.    Twin Oaks Apartments ("Twin Oaks"), 100 Twin Oaks Lane, Hattiesburg, Mississippi  39402, 100;[4]

        v.    Oak Hollow Apartments ("Oak Hollow"), 646 Whispering Oak Drive, Southaven, Mississippi  38671, 92;[5]

---

[1] Houston Levee is comprised of twenty-four (24) multi-story, non-elevator apartment buildings with a total of ninety-six (96) ground floor covered multifamily dwellings.

[2] Vineyard is comprised of twenty-six (26) multi-story, non-elevator apartment buildings with a total of one-hundred four (104) ground floor covered multifamily dwellings.

[3] Windsor Lake is comprised of fourteen (14) multi-story, non-elevator apartment buildings with a total of one-hundred twelve (112) ground floor covered multifamily dwellings.

[4] Twin Oaks is comprised of twenty-five (25) multi-story, non-elevator apartment buildings with a total of one hundred (100) ground floor covered multifamily dwellings.

[5] Oak Hollow is comprised of twenty-three (23) multi-story, non-elevator apartment buildings with a total of ninety-two (92) ground floor covered multifamily dwellings.

vi.     Spring Lake Apartments ("Spring Lake"), 1000 Spring Lake Boulevard, Jackson, Mississippi  39727, 100;[6]

vii.    Cypress Lake Apartments ("Cypress Lake"), 11101 Reiger Road, Baton Rouge, Louisiana  70809, 80;[7] and

viii.   Pelican Pointe Apartments ("Pelican Pointe"), 3400 Pelican Pointe Boulevard, Slidell, Louisiana  70458, 88;[8]

3.  The Design Professional Defendants deny the allegations in the Complaint.  This Consent Order does not constitute an admission of liability on the part of any of the Design Professional Defendants, and not all of the Design Professional Defendants are alleged to have participated in the design and/or construction of every Subject Property.

4.  The United States and the Design Professional Defendants agree that the Subject Properties are subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

**B.  Design Professional Defendants**

5.  Defendant Stephen G. Hill was the architect for Houston Levee, Twin Oaks, Spring Lake, Cypress Lake and Pelican Pointe, and in that capacity was involved in the design and/or construction of these apartment complexes.

---

[6] Spring Lake is comprised of twenty-five (25) multi-story, non-elevator apartment buildings with a total of one-hundred (100) ground floor covered multifamily dwellings.

[7] Cypress Lake is comprised of ten (10) multi-story, non-elevator apartment buildings with a total of eighty (80) ground floor covered multifamily dwellings.

[8] Pelican Pointe is comprised of twenty-two (22) multi-story, non-elevator apartment buildings with a total of eighty-eight (88) ground floor covered multifamily dwellings.

6.   Defendant Pickering Firm, Inc. a/k/a Pickering, Inc. performed certain civil engineering services for Houston Levee, and in that capacity was involved in the design and/or construction of Houston Levee.

7.   Defendant Larry Singleton d/b/a Singleton Hollomon Architects was the architect for a portion of Vineyard, and in that capacity was involved in the design and/or construction of Vineyard.

8.   Defendant H D Lang And Associates, Inc. performed civil engineering services for Vineyard and Spring Lake, and in that capacity was involved in the design and/or construction of these apartment complexes.

9.   Defendant Richard A. Barron, Architect, was an architect for Windsor Lake and for the clubhouse at Oak Hollow, and in those capacities was involved in the design and/or construction of these apartment complexes.

10.   Defendant Shows, Dearman & Waits, Inc. performed civil engineering services for a portion of Twin Oaks, and in that capacity was involved in the design and/or construction of Twin Oaks.

11.   Defendant Canizaro Cawthon Davis f/k/a Canizaro Trigiani Architects was the architect for a portion of Oak Hollow, and in that capacity was involved in the design and/or construction of Oak Hollow.

12.   Defendant Evans-Graves Engineers, Inc. performed certain civil engineering services for Cypress Lake, and in that capacity was involved in the design and/or construction of Cypress Lake.

13.   Defendant J.V. Burkes & Associates, Inc. performed certain civil engineering

services for Pelican Pointe, and in that capacity was involved in the design and/or construction of

Pelican Pointe.

### C.  Relevant Requirements of the Fair Housing Act

14.   The FHA provides that, for non-elevator residential buildings with four or more

dwelling units, all ground-floor units that are designed and constructed for first occupancy after

March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of

accessible and adaptive design to make such units accessible to, or adaptable for use by, a person

who has or develops a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

15.   The accessible and adaptive design provisions of the FHA require that for covered

multifamily dwellings: (i) the public use and common use portions of such dwellings are readily

accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage

into and within all premises within such dwellings are sufficiently wide to allow passage by

persons with a disability using wheelchairs; and (iii) all premises within such dwellings contain

the following features of adaptive design: (I) an accessible route into and through the dwelling;

(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible

locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV)

usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about

the space.  42 U.S.C. § 3604(f)(3)(C).  These features are referred to herein as the "Accessible

Design Requirements."

16.   The Subject Properties were first occupied after March 13, 1991, and therefore the

ground-floor units at the Subject Properties are "covered multifamily dwellings" within the

meaning of the FHA, 42 U.S.C. § 3604(f)(7)(B).  As such, those units and the public and

6

common use areas at the Subject Properties must comply with the Accessible Design

Requirements of 42 U.S.C. § 3604(f)(3)(C).

### D. Results of Inspections at Subject Properties Identifying Alleged Accessibility Barriers

17.   The United States inspected the Subject Properties and identified specific alleged

failures to meet the Accessible Design Requirements of the FHA at these complexes.  The

United States found, among other things, that at one or more of these Subject Properties: 1) all

the ground floor units have inaccessible round knob type door hardware on the vestibule side of

the primary entrances; 2) there are routes from the parking areas to numerous building entrances

with abrupt level changes in excess of ¼", cross slopes greater than 2%, running slopes greater

than 5% without ramp features and/or running slopes on ramps exceeding 8.33%; 3) hall bath

water closet alcoves have a depth of 34", rather than the maximum 24", and a maneuvering

clearance width of only 33½", rather than the minimum 48" clearance; 4) thermostat controls are

mounted above the maximum reach of a wheelchair user; 5) passage doors lack the required

clear opening width of 32" nominal; and 6) stairs at the building entrances reduce the head height

of the required accessible routes to the ground floor units to less than 80".

### E. Consent of the Design Professional Defendants to Entry of this Order

18.   The United States and the Design Professional Defendants agree that this Court has

jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and

42 U.S.C. §§ 3614(a).  The United States and the Design Professional Defendants further agree

that this case should be resolved as between them without further proceedings, without an

evidentiary hearing or a trial, and without any determination of this matter on its merits.  As

indicated by the signatures appearing below, the United States and the Design Professional

Defendants agree to the entry of this Consent Order, which resolves all the United States' claims against the Design Professional Defendants.

**It is hereby ORDERED, ADJUDGED, and DECREED**:

## II.   GENERAL INJUNCTION

19.  The Design Professional Defendants and each of their officers, employees, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. § 3604(f)(1)-(3).[9]

20.  The Design Professional Defendants shall maintain, and shall make available for inspection upon reasonable notice from the United States, the following information and if requested, shall confirm that the design plans comply with the applicable provisions of FHA, provided they relate to any architectural or engineering plans or designs of these defendants for multifamily complexes that are prepared after the entry of this Consent Order, and that are: 1) released for construction; 2) filed with governmental agencies; and/or 3) used for construction, in whole or in part, by them or by any entity(ies) in which they have a position of control as an officer, director, member, or manager, or have a fifty-percent (50%) or larger ownership share:

a.        the name and address of the property;

---

[9] Defendant Richard A. Barron has represented that he is not currently a licensed architect.  The provisions of this section, as well as Sections IV and V, shall not apply to him unless he restores his architectural license to an active status during the term of this Consent Order.  In that event, he shall notify counsel for the United States of this fact in writing within seven (7) days of activation, shall undergo the training specified in paragraph 31 within one hundred eighty (180) days of activation, and shall be subject to the provisions of paragraphs 32, 33, and 34 within seven (7) days of activation.  All materials sent to the United States shall be sent by United States Postal Service First Class Mail, postage pre-paid, to the following address: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C.  20530, Attn: *United States v. The Bryan Co., et al.*, DJ# 175-41-215, or as otherwise directed by the United States.

b.      a description of the property and the individual units; and

c.      a statement certifying that he/she/they has/have reviewed the plans he/she/they
has/have prepared for the property and having made reasonable inquiry into all
related facts and circumstances certify that, to the best of his/her/their knowledge,
the design specifications therein comply with the requirements of the Fair
Housing Act, and the Guidelines; and

d.      if the plans are revised by the Design Professional Defendants, and the revisions
could have any impact on the accessibility of the dwellings or property,
he/she/they will obtain, maintain, and provide to the United States upon request, a
statement that all specifications in the revised plans, to the best of his/her/their
knowledge, comply with the requirements of the Fair Housing Act and the
Guidelines.

## III.    SETTLEMENT PAYMENT

21.  Within thirty (30) days of the date of entry of this Consent Order, the Design
Professional Defendants shall cause to be paid to the United States a total of NINE HUNDRED
TWENTY-FIVE THOUSAND DOLLARS ($925,000.00).  The payment shall be in the form of
(an) electronic funds transfer(s) pursuant to written instructions to be provided by the United
States.

22.  EIGHT HUNDRED SIXTY-FIVE THOUSAND DOLLARS ($865,000.00) of the
NINE HUNDRED TWENTY-FIVE THOUSAND DOLLAR ($925,000.00) payment from the
Design Professional Defendants shall be used by the United States to establish an accessibility
fund (hereinafter "Accessibility Fund").  The United States shall use the Accessibility Fund in its
sole discretion to retrofit the Subject Properties identified in the United States' Complaint and for

other uses consistent with this Consent Order.  No money from the Accessibility Fund shall be used to compensate aggrieved persons harmed by the defendants' alleged discriminatory conduct at the Subject Properties identified in the United States' Complaint.

23.  The United States may, but is not obligated to, designate one or more fund administrators to administer the Accessibility Fund in accordance with its purpose set forth in paragraph 22.  If the United States designates one or more fund administrators to administer the Accessibility Fund, the fund shall be administered pursuant to a contract between the United States and the fund administrator(s).  The fund administrator(s) may be reimbursed out of the Accessibility Fund for reasonable administration expenses associated with administering the fund and/or overseeing the retrofit work performed at the Subject Properties.

24.  The provisions relating to the Accessibility Fund will continue until the funds have been exhausted.

25.  SIXTY THOUSAND DOLLARS ($60,000.00) of the NINE HUNDRED TWENTY-FIVE THOUSAND DOLLAR ($925,000.00) payment from the Design Professional Defendants shall be used to compensate aggrieved persons, identified by the United States, who were harmed by the defendants' alleged discriminatory conduct at the Subject Properties identified in the United States' Complaint.  A list of these persons and the amounts each will receive is attached as Appendix A.

26.  No payment shall be distributed to an aggrieved person unless and until he/she has executed and delivered to the United States the release attached to this Consent Order as Appendix B.  Should any aggrieved person refuse to execute the release attached as Appendix B, his or her share shall be distributed, in equal shares, among those aggrieved persons who execute

releases.  The United States shall deliver copies of the signed releases to counsel for each of the Design Professional Defendants.

27.  Delivery of the payment referenced in paragraph 21 above shall constitute the only monetary payment required of the Design Professional Defendants as full consideration for the settlement of this action as to the Design Professional Defendants and the terms of this Consent Order.  It is agreed that the Design Professional Defendants shall have no further payment obligations under the Consent Order.

## IV.    EDUCATIONAL PROGRAM

28.  Within thirty (30) days of the entry of this Consent Order, the Design Professional Defendants shall provide a copy of this Consent Order to all their current employees with supervisory responsibility who are or were involved in the design and/or construction of a Subject Property or any other covered multifamily dwelling property, and shall secure a signed statement from each such employee acknowledging that he or she has received and read the Consent Order and has had an opportunity to have questions about the Consent Order answered. This statement shall be substantially similar to the form of Appendix C.

29.  Within thirty (30) days after the date he/she commences an employment relationship with a Design Professional Defendant, each new employee with supervisory responsibility who is involved in the design and/or construction of a covered multifamily dwelling property shall be given a copy of this Consent Order and be required to sign a statement substantially similar in form to Appendix C acknowledging that he or she has received and read the Consent Order and has had an opportunity to have questions about the Consent Order answered.

11

30.  The Design Professional Defendants shall ensure that they and their employees who are involved in the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, <u>Fair Housing Act Design Manual</u>, <u>A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act</u>, (August 1996, Rev. April 1998).

31.  Within one hundred eighty (180) days of the date of entry of this Consent Order, the Design Professional Defendants and all their employees whose duties, in whole or in part, involve the design and/or construction of covered multifamily dwellings shall undergo training on the design and construction requirements of the Fair Housing Act.  The training shall be conducted by a qualified individual approved by the United States, and any expenses associated with this training shall be borne by the Design Professional Defendants who participate in such training.  By no later than sixty (60) days before the training, the Design Professional Defendants shall provide to the United States the name(s), address(es) and telephone number(s) of the proposed trainer(s), and copies of the training outlines and any materials to be distributed by the trainer(s).  Within thirty (30) days after the training, the Design Professional Defendants shall provide to the United States the confirmation of completion substantially equivalent to Appendix D.

## V.   NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

32.  Within one hundred ninety (190) days after the date of entry of this Consent Order, the Design Professional Defendants shall submit to the United States an initial compliance report, consisting of the signed statements required by paragraphs 28, 29, and 31.  On the anniversary of the date of entry of this Consent Order, the Design Professional Defendants shall

submit to the United States a compliance report detailing the Design Professional Defendants'

compliance with this Consent Order including, as applicable, the signed statements required by

paragraph 29, except that the last compliance report shall be due sixty (60) days prior to the

anniversary.

33.  The Design Professional Defendants shall advise the United States in writing within

thirty (30) days of receipt of any oral or written complaint involving any multifamily property

designed and/or constructed by them and/or regarding discrimination on the basis of disability in

housing.  Upon reasonable notice, the Design Professional Defendants shall also provide the

United States all reasonable and relevant information it may request concerning any such

complaint.  The Design Professional Defendants shall also advise counsel for the United States,

in writing, within thirty (30) days of the resolution of any complaint.

34.  The Design Professional Defendants are required to preserve all records related to

this Consent Order, the Subject Properties, and any other covered multifamily dwellings

designed and/or constructed by them during the duration of this Consent Order.

## VI.    DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

35.  This Consent Order shall remain in effect for three (3) years after the date of its

entry.

36.  Upon entry of the Consent Order by the Court and after receipt by the United States

of the settlement payment in paragraph 21, above, the case shall be dismissed with prejudice.

The Court shall, however, retain jurisdiction to enforce the terms of this Consent Order.  The

United States may move the Court to extend the duration of this Consent Order for non-

compliance with any of its terms or in the interests of justice.

37.  The United States and the Design Professional Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by the Design Professional Defendants to perform, in a timely manner, any act required by this Consent Order, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

## VII.  TIME FOR PERFORMANCE

38.  Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the relevant Design Professional Defendants.

39.  To the extent that the United States and/or the Design Professional Defendants previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in paragraph 1, the party(ies) is/are no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves the United States or the Design Professional Defendants of any other obligations imposed by this Consent Order.

## VIII.   COSTS OF LITIGATION

40.  Each party to this litigation will bear its own costs and attorney's fees associated with this litigation.

**SO ORDERED**, this the 15th day of May, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

The undersigned apply for and consent to the entry of this Order:

*For Plaintiff United States of America:*

GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

s/ Mitzi Dease Paige
MITZI DEASE PAIGE, MS Bar # 6014
Civil Chief
Office of the United States Attorney for the
   Southern District of Mississippi
501 East Court Street
Suite 4.430
Jackson, Mississippi  38103
Tel: 601-973-2840
Fax: 601-965-4409
E-mail: mitzi.paige@usdoj.gov

s/ Tanya Ilona Kirwan
STEVEN H. ROSENBAUM
Chief
MICHAEL S. MAURER
Deputy Chief
DC Bar # 420908
TANYA ILONA KIRWAN, MD Bar
RYAN G. LEE, WI Bar # 1041468
CARRIE PAGNUCCO, NY Bar, DC Bar #
   100551
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwestern Building, 7th Floor
Washington, D.C.  20530
Tel: (202) 514-4713
Fax: (202) 514-1116
E-mail: tanya.kirwan@usdoj.gov
E-mail: ryan.lee@usdoj.gov
E-mail: carrie.pagnucco@usdoj.gov

*For Defendant Stephen G. Hill:*

*For Defendants Pickering Firm, Inc. a/k/a Pickering, Inc., H D Lang And Associates, Inc., and Richard A. Barron:*

s/ Larry G. Canada
LARRY G. CANADA, MS Bar #10480
KATHRYN BREARD PLATT, MS Bar #102141
Galloway, Johnson, Tompkins, Burr & Smith
2510 14th Street, Suite 910
Gulfport, MS  39501
Tel.: 228-214-4250
Fax: 228-214-9650
E-mail: lcanada@gjtbs.com
E-mail: kplatt@gjtbs.com

s/ John I. Houseal, Jr.
JOHN I. HOUSEAL, JR., TN Bar #008449
ANDRE B. MATHIS, TN Bar #026458
MICHAEL D. TAUER, TN Bar #025092
ROSS E. WEBSTER, TN Bar #101957
RYAN M. SKERTICH, MS Bar # 103289
Glankler Brown, PLLC
6000 Poplar Avenue, Suite 400
Memphis, TN  38119
Tel.: 901-576-1745
Fax: 901-525-2389
E-mail: jhouseal@glankler.com
E-mail: amathis@glankler.com
E-mail: mtauer@glankler.com
E-mail:rwebster@glankler.com
E-mail: rskertich@glankler.com

*For Defendants Evans-Graves Engineers, Inc. and J.V. Burkes & Associates, Inc.:*

*For Defendants Larry Singleton d/b/a Singleton Hollomon Architects, Shows, Dearman & Waits, Inc., and Canizaro Cawthon Davis f/k/a Canizaro Trigiani Architects:*

s/ J. Ashley Inabnet
J. ASHLEY INABNET, LA Bar # 21636
MATTHEW J. GUY, LA Bar # 33166
Inabnet & Jones, LLC
1331 West Causeway Approach
Mandeville, LA  70471
Tel.: 985-624-9920
Fax: 985-624-9940
E-mail:ashley@inabnetjones.com
E-mail: mattg@inabnetjones.com

s/ Danny A. Drake
DANNY A. DRAKE, MS Bar # 8358
DAVID B. ELLIS, MS Bar #102926
Mockbee, Hall & Drake, PA
Capital Towers Building, Suite 1820
125 South Congress Street
Jackson, MS  39201
Tel.: 601-353-0035
Fax: 601-353-0045
E-mail: ddrake@mhdlaw.com
E-mail: dellis@mhdlaw.com

17

**APPENDIX A**

**AGGRIEVED PERSONS AND AMOUNTS TO BE PAID**

| | | |
|---|---|---|
| 1.) | Edward Radcliff | $12,500.00 |
| 2.) | Tony Discus | $7,500.00 |
| 3.) | Vincent Keith Cross | $7,500.00 |
| 4.) | Sherlie Cross | $7,500.00 |
| 5.) | The Estate of Edna Moody | $5,000.00 |
| 6.) | Eolia Dupay | $5,000.00 |
| 7.) | Hosea McAfee, Jr. | $5,000.00 |
| 8.) | April Henry | $3,750.00 |
| 9.) | Vicki House | $3,750.00 |
| 10.) | Vanessa Spann | $2,500.00 |

**APPENDIX B**

**RELEASE OF ALL CLAIMS**

In consideration of and contingent upon the payment of the sum of _____ dollars ($                    ), pursuant to the Consent Order entered in *United States* v. *The Bryan Co., et al.*, No. 3:11cv302 (S.D. Miss.) by the United States District Court for the Southern District of Mississippi, I hereby release and forever discharge the Design Professional Defendants named in this action from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in this action as of the date of the entry of this Consent Order.  I fully acknowledge and agree that this release of the Design Professional Defendants shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.  I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)

NAME:          _____

ADDRESS:     _____

                      _____

                      _____

DATE:          _____

**APPENDIX C**

**ACKNOWLEDGMENT OF RECEIPT OF CONSENT DECREE**

On _____, I received a copy of and have read the Consent Order entered by the federal district court in *United States* v. *The Bryan Co., et al.*, No. _____ (S.D. Miss.) on _____.  I have had all of my questions concerning the Consent Order and the Fair Housing Act answered to my satisfaction.

_____
(Signature)

_____
(Print name)

_____
(Position)

_____
(Date)

**APPENDIX D**

**CERTIFICATION OF FAIR HOUSING TRAINING**

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning accessibility for persons with disabilities.  I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.


_____
(Signature)


_____
(Print name)


_____
(Position)


_____
(Date)