UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:11-cv-302-CWR-LRA |
| ) | |
| THE BRYAN COMPANY, ) | |
| BRYAN CONSTRUCTION COMPANY, INC., ) | |
| STEVE BRYAN, ) | |
| MID-SOUTH HOUSTON PARTNERS, ) | |
| MID-SOUTH DEVELOPMENT, LLC A/K/A ) | |
| MSD, LLC, ) | |
| THE VINEYARDS APARTMENTS, LLC, ) | |
| EQUITY PROPERTIES, LLC F/K/A ) | |
| WINDSOR LAKE APARTMENT, LP, and ) | |
| CYPRESS LAKE DEVELOPMENT, LLC, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| USA HOUSTON LEVEE, DST, THE ) | |
| VINEYARDS AT CASTLEWOODS, LLC, ) | |
| SEC ACCOMMODATOR-WINDSOR LAKE, ) | |
| LLC, MID-AMERICA CAPITAL PARTNERS, ) | |
| MID-AMERICA APARTMENTS, L.P., ) | |
| SEC ACCOMMODATOR-TWIN OAKS, LLC, ) | |
| OAK HOLLOW-NE LP, ) | |
| SEC ACCOMMODATOR-SPRING LAKE, LLC, ) | |
| CYPRESS LAKE RS, LLC, ) | |
| CYPRESS LAKE GARG, LLC, and ) | |
| PELICAN POINTE-NE LP, ) | |
| ) | |
| Rule 19 Defendants. ) | |

## CONSENT ORDER

## I.     INTRODUCTION

### A.  Background

1.     Plaintiff United States of America, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Houston Partners, Mid-South Development, LLC a/k/a MSD, LLC, The Vineyards Apartments, LLC, Windsor Lake Apartment, LP, and Cypress Lake Development, LLC (hereinafter collectively referred to as the "Bryan Defendants"), and Rule 19 Necessary or Indispensable Parties USA Houston Levee, DST, The Vineyards at Castlewoods, LLC, SEC Accommodator-Windsor Lake, LLC, Mid-America Capital Partners, Mid-America Apartments, L.P., SEC Accommodator-Twin Oaks, LLC, Oak Hollow-NE LP, SEC Accommodator-Spring Lake, LLC, Cypress Lake RS, LLC, Cypress Lake GARG, LLC, and Pelican Pointe-NE LP (hereinafter collectively referred to as the "Rule 19 Defendants"), *Fed. R. Civ. P.* 19, agree to the terms of this Consent Order resolving the allegations raised in the United States' Complaint.

2.     With respect to the Bryan Defendants, this action was brought by the United States to enforce the provisions of Title VIII of the Civil Rights Act of 1968 (hereinafter the "Fair Housing Act" or "FHA"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619, and Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 (hereinafter the "ADA").  Specifically, the United States' Complaint alleges that the Bryan Defendants have engaged in a pattern or practice of discrimination against persons with disabilities and have denied rights to a group of persons because of disability by failing to design and construct the following nine (9) covered multifamily dwellings (hereinafter collectively referred to as the "Subject Properties," and individually as "Subject Property") with the features

of accessible and adaptable design and construction required by subsections 804(f)(1), 804(f)(2) and 804(f)(3)(C) of the FHA, 42 U.S.C. § 3601(f)(1), (2) & (3)(C), and, with the exception of Sutton Place Apartments, in a manner required by the ADA.

    a.   **Subject Properties --** Name, Address, Number of Covered Multifamily Dwellings

        i.    Spring Lake Apartments ("Spring Lake"), 1000 Spring Lake Boulevard, Jackson, Mississippi 39727, 100;[1]

        ii.    Cypress Lake Apartments ("Cypress Lake"), 11101 Reiger Road, Baton Rouge, Louisiana 70809, 80[2]

        iii.    Pelican Pointe Apartments ("Pelican Pointe"), 3400 Pelican Pointe Boulevard, Slidell, Louisiana 70458, 88[3]

        iv.    Houston Levee Apartments ("Houston Levee"), 9940 Paddle Wheel Drive, Cordova, Tennessee 38016,[4]

        v.    Twin Oaks Apartments ("Twin Oaks"), 100 Twin Oaks Lane, Hattiesburg, Mississippi 39402, 100[5]

        vi.    The Vineyard at Castlewoods Apartments ("Vineyard"), 1000 Vineyard Drive, Brandon, Mississippi 39047, 104[6]

        vii.    Windsor Lake Apartments ("Windsor Lake"), 100 Windsor Lake Boulevard, Brandon, Mississippi 39042, 112[7]

---

[1] Spring Lake is comprised of twenty-five (25) multi-story, non-elevator apartment buildings with a total of one-hundred (100) ground floor covered multifamily dwellings.

[2] Cypress Lake is comprised of ten (10) multi-story, non-elevator apartment buildings with a total of eighty (80) ground floor covered multifamily dwellings.

[3] Pelican Pointe is comprised of twenty-two (22) multi-story, non-elevator apartment buildings with a total of eighty-eight (88) ground floor covered multifamily dwellings.

[4] Houston Levee is comprised of twenty-four (24) multi-story, non-elevator apartment buildings with a total of ninety-six (96) ground floor covered multifamily dwellings.

[5] Twin Oaks is comprised of twenty-five (25) multi-story, non-elevator apartment buildings with a total of one hundred (100) ground floor covered multifamily dwellings.

[6] Vineyard is comprised of twenty-six (26) multi-story, non-elevator apartment buildings with a total of one-hundred four (104) ground floor covered multifamily dwellings.

[7] Windsor Lake is comprised of fourteen (14) multi-story, non-elevator apartment buildings with a total of one-hundred twelve (112) ground floor covered multifamily dwellings.

      viii.    Oak Hollow Apartments ("Oak Hollow"), 646 Whispering Oak Drive, Southaven, Mississippi  38671, 92[8]

      ix.    Sutton Place Apartments ("Sutton Place"), 1000 Sutton Place, Horn Lake, Mississippi  38637, 84[9]

3.  The Bryan Defendants deny the allegations in the complaint.  This Consent Order does not constitute an admission of liability on the part of any of the Bryan Defendants, and not all of the Bryan Defendants are alleged to have participated in the design and construction of every Subject Property.

4.  The United States, the Bryan Defendants, and the Rule 19 Defendants agree that the Subject Properties are subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C), and, with the exception of Sutton Place, to the ADA, 42 U.S.C. § 12183(a)(1).

**B.  Defendants**

5.  Defendant The Bryan Company is a Mississippi corporation with its principal place of business at 1855 Lakeland Drive, Suite 0-10 in Jackson, Mississippi.  Defendant The Bryan Company was the developer of the Subject Properties during their design and construction, and in this capacity was involved in the design and/or construction of these apartment complexes.

6.  Defendant Bryan Construction Company, Inc. is a Mississippi corporation with its principal place of business at 1855 Lakeland Drive, Suite 0-10 in Jackson, Mississippi. Defendant Bryan Construction Company, Inc. constructed the Subject Properties, and in this capacity was involved in the design and/or construction of these apartment complexes.

7.  Defendant Steve Bryan is an individual with his principal place of business at 1855 Lakeland Drive, Suite 0-10 in Jackson, Mississippi.  Defendant Steve Bryan has served as the

---

[8] Oak Hollow is comprised of twenty-three (23) multi-story, non-elevator apartment buildings with a total of ninety-two (92) ground floor covered multifamily dwellings.

[9] Sutton Place is comprised of twenty-one (21) multi-story, non-elevator apartment buildings with a total of eighty-four (84) ground floor covered multifamily dwellings.

President, Chief Executive Officer ("CEO"), Director, and Registered Agent of Defendant The Bryan Company since the company's creation on about February 26, 1986.  Defendant Steve Bryan has served as the President, CEO, Director, and Registered Agent of Defendant Bryan Construction Company, Inc. since the creation of that company on about January 21, 1982.  In his capacity as the President of Bryan Construction Company, Inc, Defendant Steve Bryan signed the contracts for that company to construct the Subject Properties.  Defendant Steve Bryan was in charge of developing, constructing, and operating Houston Levee on behalf of Defendant Mid-South Houston Partners.  Defendant Steve Bryan served as Defendant Mid-South Development, LLC a/k/a MSD, LLC's registered agent and manager.  Defendant Steve Bryan served as Defendant The Vineyard Apartments, LLC's registered agent and manager.  Defendant Steve Bryan personally received proceeds from the sale of Houston Levee, Cypress Lake, Pelican Pointe, Spring Lake, Twin Oaks, Vineyard, Oak Hollow, and Sutton Place.  In the above capacities, Defendant Steve Bryan was involved in the design and/or construction of the Subject Properties.

8.  Defendant Mid-South Houston Partners, also known as Mid-South Houston Partners, LP, was a Tennessee entity with its principal office located at 779 Avery Boulevard North in Ridgeland, Mississippi.  Defendant Mid-South Houston Partners was the owner of Houston Levee during its design and construction, and in this capacity was involved in the design and/or construction of Houston Levee.

9.  Defendant Mid-South Development, LLC a/k/a MSD, LLC was a Mississippi limited liability company with its principal place of business at 1855 Lakeland Drive, Suite 0-10 in Jackson, Mississippi.  Defendant Mid-South Development, LLC a/k/a MSD, LLC had an ownership interest in Windsor Lake and Oak Hollow during the design and construction of those

subject properties.   Defendant Mid-South Development, LLC a/k/a MSD, LLC also had an ownership interest in Defendant Mid-South Houston Partners at the time of the design and construction of Houston Levee.   In the above capacities, Mid-South Development, LLC a/k/a MSD, LLC was involved in the design and/or construction of Windsor Lake, Oak Hollow, and Houston Levee.

10.   Defendant The Vineyards Apartments, LLC was a Mississippi limited liability company created on December 3, 1998, and dissolved on December 8, 2010.   Defendant The Vineyard Apartments, LLC had its principal place of business at 779 Avery Boulevard North in Ridgeland, Mississippi.   Defendant The Vineyards Apartments, LLC was the owner of Vineyard during its design and construction, and in this capacity was involved in the design and/or construction of Vineyard.

11.   Defendant Windsor Lake Apartment, LP was a Mississippi limited liability company created on March 21, 1997 and dissolved on December 8, 2010.   Defendant Windsor Lake Apartment, LP's principal place of business was 212 Draperton Court, Suite A in Ridgeland, Mississippi.   Defendant Equity Properties, LLC f/k/a Windsor Lake Apartment, LP was a general partner of, and had a one percent ownership interest in, Windsor Lake Apartment, L.P.   Windsor Lake Apartments, L.P. owned Windsor Lake during its design and construction.   In the above capacity, Windsor Lake Apartment, LP was involved in the design and/or construction of Windsor Lake.

12.   Defendant Cypress Lake Development, LLC was a Mississippi limited liability company registered to do business in Louisiana that was created on November 2, 2000, and dissolved on December 8, 2010.   Defendant Cypress Lake Development, LLC's principal place of business was 779 Avery Boulevard North in Ridgeland, Mississippi.   Defendant Cypress Lake

Development, LLC had an ownership interest in Cypress Lake during its design and construction, and in this capacity was involved in the design and/or construction of Cypress Lake.

### C.  Sale of the Subject Properties and Joinder of New Owners

13.  Sometime after the design and construction of the Subject Properties, but prior to the filing of this action, the Subject Properties were sold to one or more of the Rule 19 Defendants identified in Paragraph 1.  The Rule 19 Defendants are named in this action solely because they are necessary parties to this lawsuit in whose absence complete relief cannot be afforded the United States.  No allegations of liability have been made against the Rule 19 Defendants by the United States, and this Consent Order does not constitute an admission of liability on the part of any of the Rule 19 Defendants.  Nothing in this Consent Order constitutes an agreement on the part of any of the Rule 19 Defendants to pay any money.  The Rule 19 Defendants have entered into this Consent Order solely to facilitate the retrofits to the Subject Properties agreed upon by the United States and the Bryan Defendants.

14.  Spring Lake was sold to SEC Accommodator-Spring Lake, LLC.  SEC Accommodator-Spring Lake, LLC is a Delaware limited liability company registered to do business in Mississippi.  Its place of business is 10703 J. Street, Suite 103 in Omaha, Nebraska. SEC Accommodator-Spring Lake, LLC is engaged in the business of apartment ownership and/or management.  SEC Accommodator-Spring Lake, LLC currently owns and/or manages Spring Lake.

15.  Cypress Lake was sold to Cypress Lake RS, LLC and Cypress Lake GARG, LLC. Cypress Lake RS, LLC and Cypress Lake GARG, LLC are Delaware limited liability companies registered to do business in Louisiana.  The domicile address of Cypress Lake RS, LLC is 2711

Centerville Road, Suite 400, in Wilmington, Delaware, and its principal office is located at 2089 East Fort Union Boulevard in Salt Lake City, Utah.  The domicile address of Cypress Lake GARG, LLC is 2711 Centerville Road, Suite 400 in Wilmington, Delaware, and its principal office is located at 14351 Crestwood Avenue in Poway, California.  Ownership of Cypress Lake has since been transferred to RS Cypress Lakes Apartments, LLC, a Utah limited liability company.  RS Cypress Lakes Apartments, LLC, is engaged in the business of apartment ownership and/or management and owns and/or manages Cypress Lake.

16.  Pelican Pointe was sold to Pelican Pointe-NE Limited Partnership.  Pelican Pointe-NE Limited Partnership is a Nebraska limited partnership registered to do business in Louisiana.  Its principal business office is c/o Dial Equities, Inc. at 10703 J Street, Suite 103 in Omaha, Nebraska.  Pelican Pointe - NE Limited Partnership is engaged in the business of apartment ownership and/or management.  Pelican Pointe - NE Limited Partnership currently owns and/or manages Pelican Pointe.

17.  Houston Levee was sold to USA Houston Levee, DST.  USA Houston Levee, DST is a statutory trust formed in Delaware on February 3, 2006.  USA Houston Levee, DST is engaged in the business of apartment ownership and/or management.  USA Houston Levee, DST currently owns and/or manages Houston Levee.

18. Twin Oaks was sold to SEC Accommodator-Twin Oaks, LLC.  SEC Accommodator-Twin Oaks, LLC is a Delaware limited liability company registered to do business in Mississippi.  Its place of business is 10703 J. Street, Suite 103 in Omaha, Nebraska.  SEC Accommodator-Twin Oaks, LLC is engaged in the business of apartment ownership and/or management.  SEC Accommodator-Twin Oaks, LLC currently owns and/or manages Twin Oaks.

19.   Vineyard was sold to The Vineyards at Castlewoods, LLC.   The Vineyards at Castlewoods, LLC was a Mississippi limited liability company formed on December 3, 1998 and dissolved on December 8, 2010, with a principal office address of 779 Avery Boulevard North in Ridgeland, Mississippi.   The Vineyards at Castlewoods, LLC was engaged in the business of apartment ownership and/or management.   Until about December 8, 2010, The Vineyards at Castlewoods, LLC owned and/or managed Vineyard.

20.   Windsor Lake was sold to SEC Accommodator-Windsor Lake, LLC.   SEC Accommodator-Windsor Lake, LLC is a Delaware limited liability company with its principal place of business at 10703 J. Street, Suite 103 in Omaha, Nebraska.   SEC Accommodator-Windsor Lake, LLC is engaged in the business of apartment ownership and/or management. SEC Accommodator-Windsor Lake, LLC currently owns and/or manages Windsor Lake.

21.   Oak Hollow was sold to Oak Hollow-NE Limited Partnership.   Oak Hollow-NE Limited Partnership is a Nebraska limited partnership registered to do business in Mississippi. Its place of business is 10703 J. Street, Suite 103 in Omaha, Nebraska.   Oak Hollow-NE Limited Partnership is engaged in the business of apartment ownership and/or management.   Oak Hollow-NE Limited Partnership currently owns and/or manages Oak Hollow.

22.   Sutton Place was sold to Mid-America Apartments, L.P. and/or Mid-America Capital Partners, L.P.   Mid-America Capital Partners, L.P. has merged with Mid-America Apartments, L.P.   Mid-America Apartments, L.P. is a Tennessee limited partnership registered to do business in Mississippi.   Its address is 6584 Poplar Avenue, Suite 340 in Memphis, Tennessee.   Mid-America Capital Partners, L.P. is or was a Delaware limited partnership registered to do business in Mississippi until December 27, 2003.   Mid-America Apartments, L.P. and Mid-America Capital Partners, L.P. are engaged in the business of apartment ownership and/or management.

Mid-America Apartments, L.P. and Mid-America Capital Partners, L.P. currently own and/or manage Sutton Place.

23.   The United States has entered into separate agreements with the Rule 19 Defendants attached to this Consent Order as Appendices A-I, and incorporated herein, in which the Rule 19 Defendants have agreed to take certain actions to facilitate the retrofitting of the Subject Properties.  Relevant portions of Appendices A-I are referenced in this Consent Order.  The Rule 19 Defendants agree to allow the retrofits as set forth in this Consent Order and in Appendices J.1 through R.3, attached hereto.  The Rule 19 Defendants further agree to be subject to the terms of this Consent Order according to the attached Appendices A-I wherein the Rule 19 Defendants agree to be so bound.

**D.  Relevant Requirements of the Fair Housing Act**

24.   The FHA provides that, for non-elevator residential buildings with four or moredwelling units, all ground-floor units that are designed and constructed for first occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain basic features of accessible and adaptive design to make such units accessible to, or adaptable for use by, a person who has or develops a disability.  42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(B).

25.   The accessible and adaptive design provisions of the FHA require that for covered multifamily dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; and (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible

locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.  42 U.S.C. § 3604(f)(3)(C).  These features are referred to herein as the "Accessible Design Requirements."

26.  The Subject Properties were first occupied after March 13, 1991, and therefore the ground-floor units at the Subject Properties are "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(B).  As such, those units and the public and common use areas at the Subject Properties must comply with the Accessible Design Requirements of 42 U.S.C. § 3604(f)(3)(C).

### E.  Relevant Requirements of the Americans with Disabilities Act

27.  The ADA and the "Standards of Accessible Design," 28 C.F.R. pt. 36, app. A, that have been issued by the U.S. Department of Justice to implement the design and construction requirements of Title III of the ADA also require that all "public accommodations" designed and constructed for first occupancy after January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations of those public accommodations, be readily accessible to and usable by persons with disabilities in accordance with certain accessibility standards promulgated under that Act.  42 U.S.C. §§ 12182(a) and 12183(a)(1).  A rental or sales office for an apartment, condominium, or patio home complex is a "public accommodation" under the ADA.  42 U.S.C. § 12181(7)(E).

28. The leasing offices for the Subject Properties, with the exception of Sutton Place, were designed and constructed for first occupancy after January 26, 1993.  Therefore, the leasing offices and the facilities and privileges provided at those offices, such as public parking, are

required to be designed and constructed in accordance with the standards promulgated under the ADA.

### F.  Results of Inspections at Subject Properties Identifying Accessibility Barriers

29.  The United States has inspected the Subject Properties and has specifically identified failures to meet the Accessible Design Requirements of the FHA and, where applicable, the Standards of Accessible Design of the ADA at these complexes.  The investigation identified, *inter alia*, that at these Subject Properties there are routes from the parking area to numerous building entrances with abrupt level changes in excess of 1/4 inch, cross slopes greater than 2%, running slopes greater than 5% without ramp features and/or running slopes on ramps exceeding 8.33%.  Also, thermostat controls are mounted above the maximum reach of a wheelchair user.

### G.  Consent of the Parties to Entry of this Order

30.  Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to make retrofits to increase compliance with the FHA and the ADA at Spring Lake as set forth herein and as outlined in the attached appendices.

31.  Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Cypress Lake Development, LLC agree to make retrofits to increase compliance with the FHA and the ADA at Cypress Lake as set forth herein and as outlined in the attached appendices.

32.  Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to make retrofits to increase compliance with the FHA and the ADA at Pelican Pointe as set forth herein and as outlined in the attached appendices.

33.  Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Houston Partners agree to make retrofits to increase compliance with the FHA

and the ADA at Houston Levee as set forth herein and as outlined in the attached appendices.

34.   Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to make retrofits to increase compliance with the FHA and the ADA at Twin Oaks as set forth herein and as outlined in the attached appendices.

35.   Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and The Vineyards Apartments, LLC agree to make retrofits to increase compliance with the FHA and the ADA at Vineyard as set forth herein and as outlined in the attached appendices.

36.   Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Development, LLC a/k/a MSD, LLC, and Windsor Lake Apartments, L.P. agree to make retrofits to increase compliance with the FHA and the ADA at Windsor Lake as set forth herein and as outlined in the attached appendices.

37.   Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Development, LLC a/k/a MSD, LLC agree to make retrofits to increase compliance with the FHA and the ADA at Oak Hollow as set forth herein and as outlined in the attached appendices.

38.   Defendants The Bryan Company, Bryan Construction Company, Inc, and Steve Bryan agree to make retrofits to increase compliance with the FHA at Sutton Place as set forth herein and as outlined in the attached appendices.  In making retrofits at the Subject Properties, the Bryan Defendants shall take appropriate steps so as not to interfere unreasonably with the use, operation, or occupancy of those Subject Properties.  The Bryan Defendants agree that those performing the retrofits will use reasonable commercial standards in so doing.  Within seven (7) days of the date of entry of this Consent Order, the Bryan Defendants and the Rule 19 Defendants shall enter into one or more appropriate contracts or agreements governing the work

to be completed at the Subject Properties.

39.  The Rule 19 Defendants, as defined in Paragraphs 14-22 agree to permit retrofitting of the relevant Subject Properties pursuant to the FHA and, with the exception of Sutton Place, the ADA, as set forth herein and as outlined in the attached appendices.

40.  The United States, the Bryan Defendants, and the Rule 19 Defendants agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).  The United States, the Bryan Defendants, and the Rule 19 Defendants further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial.

41.  The United States, the Bryan Defendants, and the Rule 19 Defendants agree that this Consent Order applies only to the Subject Properties and, as specified, to the Bryan Defendants' current and future design and construction.  See Section VIII.

42.  As indicated by the signatures appearing below, the United States, the Bryan Defendants, and the Rule 19 Defendants agree to the entry of this Consent Order.

**It is hereby ORDERED, ADJUDGED, and DECREED**:

**II.  GENERAL INJUNCTION**

43.  The Bryan Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. § 3604(f)(1)-(3). Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Houston Partners, Mid-South Development, LLC a/k/a MSD, LLC, The Vineyard Apartments, LLC, Windsor Lake Apartments, L.P. and Cypress Lake Development, LLC and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or

participation with them are enjoined from discriminating on the basis of disability as prohibited by the ADA, 42 U.S.C. §§ 12182(a) and 12183(a)(1).

44.  The Rule 19 Defendants and each of their officers, employees, agents, successors and assigns, and all other persons in active concert or participation with them agree not to interfere with or prevent the retrofitting ordered herein, and agree not to interfere with or prevent the implementation or completion of this Consent Order.

## III.    RETROFITS AT SUBJECT PROPERTIES

45.  The United States, as set forth herein and in its Complaint, alleges that the Subject Properties do not meet the Accessible Design Requirements of the FHA or the accessibility and adaptability requirements of the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwelling, 56 Fed. Reg. 9472 (1991) ("Guidelines"), and, with the exception of Sutton Place, do not meet the ADA or the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities ("ADA Standards" or "ADAAG").  To address this, the Bryan Defendants shall complete the actions and retrofits described in this section and Appendices J.1 through R.3.[10]

46.  Within thirty (30) days of the date of entry of this Consent Order, the Bryan Defendants shall establish a trust account in the name of Spring Lake (hereinafter "Spring Lake Trust Account").  After being notified by the Bryan Defendants, in writing, that the Spring Lake Trust Account has been created, the United States shall promptly transfer TWO HUNDRED TWENTY-SIX THOUSAND NINE HUNDRED FORTY DOLLARS ($226,940) of the EIGHT HUNDRED SIXTY-FIVE THOUSAND DOLLARS ($865,000) that is currently held by the

---

[10] HUD regulations provide that "[a] public or common use area that complies with the appropriate requirements of ANSI A117.1-1986 or a comparable standard is accessible."  See 24 C.F.R. 100.201 (2002).   HUD interprets "comparable standard" to mean a "standard that affords [persons with disabilities] access essentially equivalent to or greater than that required by ANSI A117.1."  See 54 Fed. Reg. 3243 (Jan 23, 1989).

United States Treasury in an Accessibility Fund (hereinafter "Accessibility Fund") previously established in this case, into the Spring Lake Trust Account.  Once the TWO HUNDRED TWENTY-SIX THOUSAND NINE HUNDRED FORTY DOLLARS ($226,940) from the Accessibility Fund has been deposited into the Spring Lake Trust Account, the Bryan Defendants may begin, and shall timely complete, all retrofits set forth in Appendices J.1 through J.3.  All sums deposited into the Spring Lake Trust Account shall be used to retrofit Spring Lake, unless the provisions of Paragraph 52 apply.

47.  Within thirty (30) days of the date of entry of this Consent Order, the Bryan Defendants shall establish a trust account in the name of Cypress Lake (hereinafter "Cypress Lake Trust Account").  After being notified by the Bryan Defendants, in writing, that the Cypress Lake Trust Account has been created, the United States shall promptly transfer ONE HUNDRED SIX THOUSAND NINE HUNDRED TWENTY-ONE DOLLARS ($106,921) from the Accessibility Fund into the Cypress Lake Trust Account.  Once the ONE HUNDRED SIX THOUSAND NINE HUNDRED TWENTY-ONE DOLLARS ($106,921) from the Accessibility Fund has been deposited into the Cypress Lake Trust Account, the Bryan Defendants may begin, and shall timely complete, all retrofits set forth in Appendices K.1 through K.3.  All sums deposited into the Cypress Lake Trust Account shall be used to retrofit Cypress Lake, unless the provisions of Paragraph 52 apply.

48.  Within thirty (30) days of the date of entry of this Consent Order, the Bryan Defendants shall establish a trust account in the name of Pelican Pointe (hereinafter "Pelican Pointe Trust Account").  After being notified by the Bryan Defendants, in writing, that the Pelican Pointe Trust Account has been created, the United States shall promptly transfer TWO HUNDRED TWENTY-NINE THOUSAND FIVE HUNDRED EIGHTY-SIX DOLLARS

($229,586) from the Accessibility Fund into the Pelican Pointe Trust Account.  Once the TWO HUNDRED TWENTY-NINE THOUSAND FIVE HUNDRED EIGHTY-SIX DOLLARS ($229,586) from the Accessibility Fund has been deposited into the Pelican Pointe Trust Account, the Bryan Defendants may begin, and shall timely complete, all retrofits set forth in Appendices L.1 through L.3.  All sums deposited into the Pelican Pointe Trust Account shall be used to retrofit Pelican Pointe, unless the provisions of Paragraph 52 apply.

49.   Within thirty (30) days of the date of entry of this Consent Order, the Bryan Defendants shall establish a trust account in the name of Houston Levee (hereinafter "Houston Levee Trust Account").  After being notified by the Bryan Defendants, in writing, that the Houston Levee Trust Account has been created, the United States shall promptly transfer TWO HUNDRED FIFTY-ONE THOUSAND NINE HUNDRED THIRTY-EIGHT DOLLARS ($251,938) from the Accessibility Fund into the Houston Levee Trust Account.  Once the TWO HUNDRED FIFTY-ONE THOUSAND NINE HUNDRED THIRTY-EIGHT DOLLARS ($251,938) from the Accessibility Fund has been deposited into the Houston Levee Trust Account, the Bryan Defendants may begin, and shall timely complete, all retrofits set forth in Appendices M.1 through M.3.  All sums deposited into the Houston Levee Trust Account shall be used to retrofit Houston Levee, unless the provisions of Paragraph 52 apply.

50.   Within thirty (30) days of the date of entry of this Consent Order, the Bryan Defendants shall establish a trust account in the name of Twin Oaks (hereinafter "Twin Oaks Trust Account").  After being notified by the Bryan Defendants, in writing, that the Twin Oaks Trust Account has been created, the United States shall promptly transfer FORTY-NINE THOUSAND SIX HUNDRED FIFTEEN THOUSAND DOLLARS ($49,615), plus any and all interest that has accrued on the Accessibility Fund as of the date of the transfer, from the

Accessibility Fund into the Twin Oaks Trust Account.  Once the FORTY-NINE THOUSAND SIX HUNDRED FIFTEEN THOUSAND DOLLARS ($49,615) plus any and all interest from the Accessibility Fund has been deposited into the Twin Oaks Trust Account, the Bryan Defendants may begin, and shall timely complete, all retrofits set forth in Appendices N.1 through N.3.  All sums deposited into the Twin Oaks Trust Account shall be used to retrofit Twin Oaks, unless the provisions of Paragraph 52 apply.

51.    Any and all expenses associated with completing the retrofits at Spring Lake, Cypress Lake, Pelican Pointe, Houston Levee, Twin Oaks, Vineyard, Windsor Lake, Oak Hollow, and Sutton Place that is above and beyond the sums received from the Accessibility Fund shall be borne by the Bryan Defendants.

52.    The United States may allow the Bryan Defendants to use funds deposited into the Trust Accounts described in Paragraphs 46 to 50 for retrofits at other of the Subject Property(ies) upon request by the Bryan Defendants and upon good cause shown.

53.    As set forth in Appendix W, the Bryan Defendants attest to having the financial ability to perform the obligations, including all retrofits, set forth in this Consent Order.

54.    The Rule 19 Defendants agree to allow access to the public and common use areas of the relevant Subject Property(ies) and access to the unit interiors at the Subject Property(ies) for the purpose of planning, evaluating, and performing any retrofit required under this Consent Order.

**A.  Spring Lake**

**i.   Retrofits to Public and Common Use Areas**

55.    As soon as reasonably possible, but by no later than two (2) years from entry of this Consent Order, The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan,

agree to take the corrective actions necessary to increase the accessibility of the public and common use areas of Spring Lake, including the Accessible Pedestrian Routes identified in Appendix J.1, by completing the retrofits described in Appendix J.2, and by taking the actions described below.

### ii.   Retrofits to Covered Multifamily Dwelling Unit Interiors

56.   As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than two (2) years from entry of this Consent Order regardless of whether or not a unit is vacated, The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Spring Lake by completing the retrofits described in Appendix J.3, and by taking the actions described below.  All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

57.   Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan, with any assistance necessary from SEC Accommodator-Spring Lake, LLC, shall provide a notice that is substantially equivalent to Appendix S to Spring Lake residents in covered multifamily dwelling units.  Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by SEC Accommodator-Spring Lake, LLC or any subsequent owner of Spring Lake; such approval shall not be unreasonably withheld.

58.   Spring Lake residents may request retrofits, in writing, and the requests shall be granted by The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan on a first-come, first-served basis.

### B.  Cypress Lake

#### i.   Retrofits to Public and Common Use Areas

59.   As soon as reasonably possible, but by no later than two (2) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Cypress Lake Development, LLC agree to take the corrective actions necessary to increase the accessibility of the public and common use areas of Cypress Lake, including the Accessible Pedestrian Routes identified in Appendix K.1, by completing the retrofits described in Appendix K.2, and by taking the actions described below.

#### ii.   Retrofits to Covered Multifamily Dwelling Unit Interiors

60.   As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than two (2) years from entry of this Consent Order regardless of whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Cypress Lake Development, LLC agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Cypress Lake by completing the retrofits described in Appendix K.3, and by taking the actions described below.   All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

61. Within thirty (30) days from the date of the entry of this Consent Order, with any assistance necessary from RS Cypress Lakes Apartments, LLC, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Cypress Lake Development, LLC shall provide a notice that is substantially equivalent to Appendix S to Cypress Lake residents in covered multifamily dwelling units.  Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by RS Cypress Lakes Apartments, LLC, or any subsequent owner of Cypress Lake; such approval shall not be unreasonably withheld.

62. Cypress Lake residents may request retrofits, in writing, and the requests shall be granted by Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Cypress Lake Development, LLC on a first-come, first-served basis.

**C. Pelican Pointe**

**i. Retrofits to Public and Common Use Areas**

63. As soon as reasonably possible, but by no later than two (2) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to take the corrective actions necessary to increase the accessibility of the public and common use areas of Pelican Pointe, including the Accessible Pedestrian Routes identified in Appendix L.1, by completing the retrofits described in Appendix L.2, and by taking the actions described below.

**ii. Retrofits to Covered Multifamily Dwelling Unit Interiors**

64. As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than two (2) years from entry of this Consent Order regardless of

whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Pelican Pointe by completing the retrofits described in Appendix L.3, and by taking the actions described below.  All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

65.  Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan, with any assistance necessary from Pelican Pointe-NE Limited Partnership, shall provide a notice that is substantially equivalent to Appendix S to Pelican Pointe residents in covered multifamily dwelling units.  Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by Pelican Pointe-NE Limited Partnership or any subsequent owner of Pelican Pointe; such approval shall not be unreasonably withheld.

66.  Pelican Pointe residents may request retrofits, in writing, and the requests shall be granted by Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan on a first-come, first-served basis.

**D.  Houston Levee**

**i.   Retrofits to Public and Common Use Areas**

67.  As soon as reasonably possible, but by no later than two (2) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Houston Partners agree to take the corrective actions necessary to increase

the accessibility of the public and common use areas of Houston Levee, including the Accessible Pedestrian Routes identified in Appendix M.1, by completing the retrofits described in Appendix M.2, and by taking the actions described below.

### ii. Retrofits to Covered Multifamily Dwelling Unit Interiors

68.   As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than two (2) years from entry of this Consent Order regardless of whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Houston Partners agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Houston Levee by completing the retrofits described in Appendix M.3, and by taking the actions described below.   All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

69.   Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Houston Partners, with any necessary assistance from USA Houston Levee, DST, shall provide a notice that is substantially equivalent to Appendix S to Houston Levee residents in covered multifamily dwelling units.   Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by USA Houston Levee, DST or any subsequent owner of Houston Levee; such approval shall not be unreasonably withheld.

70.  Houston Levee residents may request retrofits, in writing, and the requests shall be granted by Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Houston Partners on a first-come, first-served basis.

### E.  Twin Oaks

#### i.   Retrofits to Public and Common Use Areas

71.  As soon as reasonably possible, but by no later than two (2) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to take the corrective actions necessary to increase the accessibility of the public and common use areas of Twin Oaks, including the Accessible Pedestrian Routes identified in Appendix N.1, by completing the retrofits described in Appendix N.2, and by taking the actions described below.

#### ii.   Retrofits to Covered Multifamily Dwelling Unit Interiors

72.  As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than two (2) years from entry of this Consent Order regardless of whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Twin Oaks by completing the retrofits described in Appendix N.3, and by taking the actions described below.  All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

73.   Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan, with any assistance necessary from SEC Accommodator-Twin Oaks, LLC, shall provide a notice that is substantially equivalent to Appendix S to Twin Oaks residents in covered multifamily dwelling units. Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by SEC Accommodator-Twin Oaks, LLC   or any subsequent owner of Twin Oaks; such approval shall not be unreasonably withheld.

74.   Twin Oaks residents may request retrofits, in writing, and the requests shall be granted by Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan on a first-come, first-served basis.

### F.  Vineyard

#### i.   Retrofits to Public and Common Use Areas

75.   As soon as reasonably possible, but by no later than four (4) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and The Vineyards Apartments, LLC agree to take the corrective actions necessary to increase the accessibility of the public and common use areas of Vineyard, including the Accessible Pedestrian Routes identified in Appendix O.1, by completing the retrofits described in Appendix O.2, and by taking the actions described below.

#### ii.  Retrofits to Covered Multifamily Dwelling Unit Interiors

76.   As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than four (4) years from entry of this Consent Order regardless of whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company,

Inc., Steve Bryan, and The Vineyards Apartments, LLC agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Vineyard by completing the retrofits described in Appendix O.3, and by taking the actions described below.  All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

77.  Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and The Vineyards Apartments, LLC, with any necessary assistance from The Vineyards at Castlewoods, LLC, shall provide a notice that is substantially equivalent to Appendix S to Vineyard residents in covered multifamily dwelling units.  Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by The Vineyards at Castlewoods, LLC or any subsequent owner of Vineyard; such approval shall not be unreasonably withheld.

78.  Vineyard residents may request retrofits, in writing, and the requests shall be granted by Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and The Vineyards Apartments, LLC on a first-come, first-served basis.

### G.     Windsor Lake

#### i.     Retrofits to Public and Common Use Areas

79.  As soon as reasonably possible, but by no later than five (5) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Development, LLC a/k/a MSD, LLC, and Windsor Lake Apartments, L.P. agree to take the corrective actions necessary to increase the accessibility of the public and

common use areas of Windsor Lake, including the Accessible Pedestrian Routes identified in Appendix P.1, by completing the retrofits described in Appendix P.2, and by taking the actions described below.

### ii.   Retrofits to Covered Multifamily Dwelling Unit Interiors

80.   As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than five (5) years from entry of this Consent Order regardless of whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Development, LLC a/k/a MSD, LLC, and      Windsor Lake Apartments, L.P. agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Windsor Lake by completing the retrofits described in Appendix P.3, and by taking the actions described below.   All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

81.   Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Development, LLC a/k/a MSD, LLC, and Windsor Lake Apartments, L.P., with any necessary assistance from SEC Accommodator-Windsor Lake, LLC, shall provide a notice that is substantially equivalent to Appendix S to Windsor Lake residents in covered multifamily dwelling units.   Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by SEC Accommodator-Windsor Lake,

LLC or any subsequent owner of Windsor Lake; such approval shall not be unreasonably withheld.

82. Windsor Lake residents may request retrofits, in writing, and the requests shall be granted by The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Development, LLC a/k/a MSD, LLC, and Windsor Lake Apartments, L.P. on a first-come, first-served basis.

### H.  Oak Hollow

#### i.   Retrofits to Public and Common Use Areas

83. As soon as reasonably possible, but by no later than five (5) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Development, LLC a/k/a MSD, LLC agree to take the corrective actions necessary to increase the accessibility of the public and common use areas of Oak Hollow, including the Accessible Pedestrian Routes identified in Appendix Q.1, by completing the retrofits described in Appendix Q.2, and by taking the actions described below.

#### ii.  Retrofits to Covered Multifamily Dwelling Unit Interiors

84. As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than five (5) years from entry of this Consent Order regardless of whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Development, LLC a/k/a MSD, LLC agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Oak Hollow by completing the retrofits described in Appendix Q.3, and by taking the actions described below.  All interior retrofits required at any one unit must be completed within

fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

85. Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Development, LLC a/k/a MSD, LLC, with any assistance necessary from Oak Hollow - NE Limited Partnership, shall provide a notice that is substantially equivalent to Appendix S to Oak Hollow residents in covered multifamily dwelling units.  Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by Oak Hollow - NE Limited Partnership or any subsequent owner of Oak Hollow; such approval shall not be unreasonably withheld.

86. Oak Hollow residents may request retrofits, in writing, and the requests shall be granted by Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, and Mid-South Development, LLC a/k/a MSD, LLC on a first-come, first-served basis.

**I. Sutton Place**

**i. Retrofits to Public and Common Use Areas**

87. As soon as reasonably possible, but by no later than five (5) years from entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to take the corrective actions necessary to increase the accessibility of the public and common use areas of Sutton Place, including the Accessible Pedestrian Routes identified in Appendix R.1, by completing the retrofits described in Appendix R.2, and by taking the actions described below.

### ii.  Retrofits to Covered Multifamily Dwelling Unit Interiors

88.  As soon as reasonably possible, but by no later than the first time the unit becomes vacant following entry of this Consent Order, and before the unit is re-occupied by a new tenant ("as-turned") or by no later than five (5) years from entry of this Consent Order regardless of whether or not a unit is vacated, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan agree to take the corrective actions necessary to increase the accessibility of the covered multifamily dwelling unit interiors of Sutton Place by completing the retrofits described in Appendix R.3, and by taking the actions described below.  All interior retrofits required at any one unit must be completed within fourteen (14) days of the date upon which access to the unit is first provided to Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan.

89.  Within thirty (30) days from the date of the entry of this Consent Order, Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan, with any assistance necessary from Mid-America Apartments, L.P. and Mid-America Capital Partners, L.P., shall provide a notice that is substantially equivalent to Appendix S to Sutton Place residents in covered multifamily dwelling units.  Provided, however, that no notice shall be sent to the residents in covered multifamily dwelling units unless it has been approved by Mid-America Apartments, L.P. and Mid-America Capital Partners, L.P. or any subsequent owner of Sutton Place; such approval shall not be unreasonably withheld.

90.  Sutton Place residents may request retrofits, in writing, and the requests shall be granted by Defendants The Bryan Company, Bryan Construction Company, Inc., and Steve Bryan on a first-come, first-served basis.

**IV.    INCONVENIENCE AND OVERNIGHT STAYS FOR RETROFITTING COVERED MULTIFAMILY DWELLING UNIT INTERIORS AT SUBJECT PROPERTIES**

91.   The Bryan Defendants shall minimize inconvenience to residents in scheduling and performing retrofits required by this Consent Order to covered multifamily dwelling unit interiors at the Subject Properties for which they have retrofit responsibility.

92.   If a resident of a unit scheduled to undergo a retrofit at one of the Subject Properties will be dislocated from the unit for more than twenty-four (24) hours consecutively, the Bryan Defendants responsible for the Retrofits to Covered Multifamily Dwelling Unit Interiors, set forth in Section III(A)(ii)-(I)(ii), Paragraphs 56, 60, 64, 68, 72, 76, 80, 84, and 88 shall timely contact the applicable Rule 19 Defendant(s) and request that the resident be housed in the model unit at the applicable Subject Property until such time as the retrofits to the resident's unit are complete.   Under no circumstances shall the duration of any one stay in a model unit exceed seventy-two (72) hours.   The Rule 19 Defendants agree to honor any such reasonable request made by the Bryan Defendants, availability permitting.    In the event that the model unit is unavailable, the Bryan Defendants responsible for the Retrofits to Covered Multifamily Dwelling Unit Interiors, set forth in Section III(A)(ii)-(I)(ii), Paragraphs 56, 60, 64, 68, 72, 76, 80, 84, and 88 agree to pay the resident the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the resident(s).   Such payment shall not be made from the trust accounts described in Paragraphs 46-50, but shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident may use the money to obtain alternative living accommodations and obtain food while dislocated.   Nothing in this provision of the Consent Order absolves any tenant of his or her obligation to pay rent.

## V.   NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS AT SUBJECT PROPERTIES

93.   Within sixty (60) days of the entry of this Consent Order, the Defendants responsible for the Retrofits to Public and Common Use Areas, set forth in Section III(A)(i)-(I)(i), Paragraphs 55, 59, 63, 67, 71, 75, 79, 83, and 87, shall provide written notice to all residents at the relevant Subject Property stating that the retrofits required by this Consent Order will be performed to the public and common use areas at that property, which include unit entrances and accessible routes.  Such notice shall conform to Appendix T.  The Bryan Defendants responsible for the Retrofits to Public and Common Use Areas shall certify to the United States in writing that the notices have been distributed and the manner in which they were distributed within ten (10) days after such distribution.  Provided, however, that no notice shall be sent to any resident of the Subject Property unless it has been approved by the associated Rule 19 Defendant or any subsequent owner of the Subject Property; such approval shall not be unreasonably withheld.

## VI. NEUTRAL INSPECTOR AT SUBJECT PROPERTIES

94.   The Bryan Defendants responsible for the Retrofits to Public and Common Use Areas and the Retrofits to Covered Multifamily Dwelling Unit Interiors, set forth in Section III(A-I)(i-ii), Paragraphs 55, 56, 59, 60, 63, 64, 67, 68, 71, 72, 75, 76, 79, 80, 83, 84, 87, and 88, shall enter into a contract with a neutral inspector approved by the United States ("Properties Inspector") to conduct on-site inspections of the retrofits at the relevant Subject Property that have been performed under this Consent Order to determine whether the retrofits have been completed in accord with the specifications in this Consent Order's Appendices, Appendices J.1 through R.3.   The Properties Inspector shall have expertise in the Accessible Design Requirements of the FHA, and the accessibility requirements of the Guidelines, the ADA and the ADA standards.

95.   An inspection of a Subject Property shall take place within thirty (30) days of the completion of all of the retrofits to units and common use areas at that Subject Property, or as soon thereafter as practicable.   The Bryan Defendants responsible for the retrofitting at that Subject Property shall give the United States and the Rule 19 Defendants at least three (3) weeks written notice of the inspection and shall give the United States and the Rule 19 Defendants an opportunity to have their representatives present for the inspection.

96.   The Properties Inspector shall set out the results of each inspection of a Subject Property, including deficits, if any, in writing and shall send that report to counsel for the Bryan Defendants responsible for the retrofitting at that property, counsel for the United States,[11] and counsel for the Rule 19 Defendants.   If the inspection indicates that not all of the required retrofits have been made as specified in the Appendices that apply to the Subject Property, the Bryan Defendants responsible for the retrofitting at that property shall correct any deficiencies within a reasonable period of time and shall pay for another inspection by the same Properties Inspector to certify the deficiencies have been corrected.   This process shall continue until the Properties Inspector certifies that all of the necessary retrofits have been made.   The Bryan Defendants responsible for retrofitting each property shall pay all of the Properties Inspector's reasonable costs associated with the inspections of that Subject Property, and such payments shall be made without regard to the Properties Inspector's findings.   Payments to the Properties Inspector shall not be made from any of the trust accounts described in Paragraphs 46-50.   Upon reasonable notice to the relevant the Bryan Defendants and Rule 19 Defendants, representatives

---

[11]   For purposes of this Order, counsel for the United States is: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C.  20530, Attn: *United States* v. *The Bryan Co.*, DJ# 175-41-215.  All reports mentioned in this Consent Order shall be sent: (1) to the above address; (2) via electronic mail as specified by the United States; (3) via facsimile to (202) 514-1116; or (4) as otherwise directed by the United States.

of the United States shall be permitted to inspect the retrofits in accordance with this Consent Order, as well as the Properties Inspector's inspection reports provided for in this Consent Order, to ensure compliance.  The United States shall endeavor to minimize any inconvenience caused by such inspections.

## VII.   TRANSFER OF INTEREST IN SUBJECT OR ADDITIONAL PROPERTIES

97.   The sale or transfer of ownership, in whole or in part, by an owner of a Subject Property shall not affect the continuing obligation of the Bryan Defendants responsible for the retrofitting to retrofit that Subject Property as specified in this Consent Order.  Should a Rule 19 Defendant or an entity related to, or affiliated with, a Rule 19 Defendant decide to sell or transfer any ownership of a Subject Property, in whole or in part, prior to the completion of the retrofits at a Subject Property specified in this Consent Order and its Appendices, that Rule 19 Defendant or entity will: (a) prior to completion of the sale or transfer, provide to each prospective buyer written notice that the Subject Property is subject to this Consent Order, including specifically the Bryan Defendants' obligations to complete required surveys, retrofit work and inspections, by providing a copy of this Consent Order; and (b) within fourteen (14) days after the completion of the sale, provide to the United States, by facsimile or electronic mail and first-class mail or overnight delivery, written notice of the sale of a Subject Property by a Rule 19 Defendant or an entity related to, or affiliated with, a Rule 19 Defendant, along with a copy of the notice sent to each buyer prior to the completion of the sale or transfer, and each buyer's name, address and telephone number.  The notice requirements in the Paragraph shall terminate upon certification that the necessary retrofits have been completed as set forth in Paragraph 96.

## VIII.  NON-DISCRIMINATION IN CURRENT AND FUTURE DESIGN AND CONSTRUCTION

98.  For the duration of this Order, the Bryan Defendants shall maintain and provide to the United States the following information and statements regarding any covered multifamily dwellings, not otherwise in this Consent Order, developed, built, designed and/or constructed, in whole or in part, after the date of this Consent Order, by them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a fifty-percent (50%) or larger ownership share:

a.   the name and address of the covered multifamily dwellings;

b.   a description of the covered multifamily dwelling project and the individual units;

c.   the name, address, and telephone number of the civil engineers involved with the covered multifamily dwelling project;

d.   a statement from all civil engineers involved with the covered multifamily dwelling project acknowledging and describing his/her/their knowledge of, and training in, the requirements of the Fair Housing Act, the requirements of the ADA, and in the field of accessible site design and certifying that he/she has reviewed the engineering documents for the project and having made reasonable inquiry into all related facts and circumstances that to the best of his/her knowledge the design specifications therein comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and ADA Standards;

e.   the name, address and telephone number of the architects involved with the covered multifamily dwelling project;

f.   a statement from all architects involved with the covered multifamily dwelling project, acknowledging and describing his/her/their knowledge of and training in

the requirements of the FHA, the requirements of the ADA, and in the field of accessible site and unit design and certifying that he/she has reviewed the architectural plans for the project and having made reasonable inquiry into all related facts and circumstances that to the best of his/her knowledge the design specifications therein comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and ADA Standards.

g.   if the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or project, the Bryan Defendants involved with the multifamily dwelling project shall obtain, maintain, and provide to the United States upon request, a statement from the site engineers or architects, who are employed or retained by the(ose) Bryan Defendants, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, after having made reasonable inquiry into all related facts and circumstances that to the best of his/her/their knowledge the design specifications therein comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and ADA Standards.

## IX.   EDUCATIONAL PROGRAM

99.  Within thirty (30) days of the entry of this Order, the Bryan Defendants shall provide a copy of this Consent Order to all their agents and employees with supervisory responsibility who were involved in the design or construction of a Subject Property or any other covered multifamily dwelling property and shall secure a signed statement from each agent or employee acknowledging that he or she has received and read the Consent Order and has had an opportunity to have questions about the Order answered.  This statement shall be substantially

similar to the form of <u>Appendix U</u>.

100.  During the term of this Consent Order, within thirty (30) days after the date he/ she commences an agency or employment relationship with a Bryan Defendant, each new agent or employee with supervisory responsibility who is involved in the design and construction of a Subject Property or any other covered multifamily dwelling property shall be given a copy of this Consent Order and be required to sign a statement substantially similar in form to <u>Appendix U</u> acknowledging that he or she has received and read the Consent Order, and has had an opportunity to have questions about the Consent Order answered.

101.  The Bryan Defendants shall also ensure that they, their employees, and their agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development, <u>Fair Housing Act Design Manual</u>, <u>A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act</u>, (August 1996, Rev. April 1998).  The Bryan Defendants and all of their employees and agents whose duties, in whole or in part, involve the management, sale, and/or rental of covered multifamily dwellings at issue in this case, shall be informed of those provisions of the Fair Housing Act that relate to accessibility requirements, reasonable accommodations, and reasonable modifications.

102.  Within one hundred fifty (150) days of the date of entry of this Consent Order, the Bryan Defendants and all their employees and agents whose duties, in whole or in part, either involve or will involve primary management authority over the development, design, and/or construction of covered multifamily dwellings, shall undergo training on the design and construction requirements of the Fair Housing Act and the ADA.   The training shall be

conducted by a qualified individual approved by the United States, and any expenses associated with this training shall be borne by the Bryan Defendants who participated in such training. Payment for such training shall not be made with funds from any of the trust accounts described in Paragraph 46-50. The Bryan Defendants, shall provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainer(s); and certifications executed by all the Bryan Defendants, and their covered employees and agents, confirming their attendance in a form substantially equivalent to Appendix V.

## X.    NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

103.   Within ten (10) days of the date of entry of this Consent Order, the Bryan Defendants and Rule 19 Defendants shall post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them a sign no smaller than ten (10) by fourteen (14) inches indicating that all dwellings are available for rental or sale on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

104.  For the duration of this Consent Order, in all future advertising in newspapers, electronic media, pamphlets, brochures and other promotional literature regarding a Subject Property or any new covered multifamily dwelling that any Bryan Defendant may develop, design or construct, the Bryan Defendant shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act and/or the international symbol of accessibility.

## XI.    NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

105.  Within one hundred eighty (180) days after the date of entry of this Consent Order, the Bryan Defendants shall submit to the United States an initial compliance report, consisting of the signed statements of the Bryan Defendants, their employees and agents who have completed the training program specified in Paragraph 102 of this Consent Order.  Thereafter during the term of this Consent Order, the Bryan Defendants, shall, on the anniversary of the entry of this Consent Order, submit to the United States a compliance report detailing the Bryan Defendants' compliance with this Consent Order including, as applicable, details on the retrofitting and inspections of retrofits at the Subject Properties by the Bryan Defendants responsible for the retrofitting and inspecting those properties, and the signed statements of the Bryan Defendants' new employees and agents that, in accordance with Paragraph 100 of this Consent Order, they have received and read this Consent Order, and had an opportunity to have questions about this Consent Order answered, except that the last compliance report shall be due sixty (60) days prior to the anniversary.

106.  The Bryan Defendants shall include in their annual compliance reports (described in Paragraph 105): (1) a certification that the Bryan Defendants have sent notices of available retrofits that shall be made upon request to all residents upon entry of this Consent Order and annually thereafter; (2) a report of whether any request(s) for retrofits have been made; and (3) a statement of what action, if any, the Bryan Defendants took in response to the request(s).

107.  For the duration of this Consent Order, the Bryan Defendants shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint involving any property designed, constructed, owned, or managed by them, or against any employees or agents of the Bryan Defendants working at or for any such

property, and regarding discrimination on the basis of disability in housing.  Upon reasonable notice, the Bryan Defendants shall also provide the United States all information it may request concerning any such complaint.  The Bryan Defendants shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

108.  For the term of this Consent Order, the Bryan Defendants are required to preserve all records related to this Consent Order, related to the Subject Properties, and related to any other covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Consent Order.  Upon reasonable notice to the Bryan Defendants, representatives of the United States shall be permitted to inspect and copy any records of the Bryan Defendants and/or inspect any developments or residential units under the control of the Bryan Defendants bearing on compliance with this Consent Order at any and all reasonable times provided, however, that the United States shall endeavor to minimize any inconvenience to Bryan Defendants from such inspections.

## XII.   DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION

109.  With respect to the Bryan Defendants, this Consent Order shall remain in effect for five (5) years after the date of its entry, or six (6) months after all the retrofits at all the Subject Properties are completed and certified by the Properties Inspector as set forth in Paragraphs 94-96, whichever is later.  With respect to the Rule 19 Defendants, this Consent Order shall remain in effect until all retrofits at their respective property(ies) are completed and certified by the Properties Inspector as set forth in Paragraphs 94-96.

110.  The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of this Consent Order, at which time the case shall be dismissed with prejudice.  The

United States may move the Court to extend the duration of this Consent Order in the interests of justice.

111.   The United States, the Defendants, and the Rule 19 Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by the Bryan Defendants and/or the Rule 19 Defendants to perform, in a timely manner, any act required by this Consent Order, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

## XIII.   TIME FOR PERFORMANCE

112.   Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the relevant Defendants and/or Rule 19 Defendants.

113.   To the extent that the United States and/or the Bryan Defendants previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in Paragraphs 1-2, the parties are no longer required to maintain such a litigation hold. Nothing in this paragraph relieves the United States or the Bryan Defendants of any other obligations imposed by this Consent Order.

## XIV.   COSTS OF LITIGATION

113.   Each party to this litigation will bear its own costs and attorney's fees associated with this litigation.

SO ORDERED this 24th day of February, 2014.


s/Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

The undersigned apply for and consent to the entry of this Order:

*For Plaintiff United States of America:*

GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

/s/ Mitzi Dease Paige
MITZI DEASE PAIGE, MS Bar # 6014
Civil Chief
Office of the United States Attorney for the
  Southern District of Mississippi
501 East Court Street
Suite 4.430
Jackson, Mississippi  38103
Tel: 601-973-2840
Fax: 601-965-4409
E-mail: mitzi.paige@usdoj.gov

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

/s/ Tanya Ilona Kirwan
STEVEN H. ROSENBAUM
Chief
MICHAEL S. MAURER
Deputy Chief
DC Bar # 420908
TANYA ILONA KIRWAN, MD Bar
RYAN G. LEE, WI Bar # 1041468
CARRIE PAGNUCCO, NY Bar, DC Bar #
  1000551
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Avenue, N.W.
Northwestern Building, 7th Floor
Washington, D.C.  20530
Tel: (202) 514-4713
Fax: (202) 514-1116
E-mail: tanya.kirwan@usdoj.gov

*For Defendants The Bryan Company, Bryan Construction Company, Inc., Steve Bryan, Mid-South Houston Partners, Mid-South Development, LLC a/k/a MSD, LLC, The Vineyards Apartments, LLC, Equity Properties, LLC f/k/a Windsor Lake Apartment, LP, and Cypress Lake Development, LLC, and Rule 19 Defendant The Vineyards at Castlewoods, LLC:*

/s/ Steven H. Smith
STEVEN H. SMITH, MS Bar # 7610
Steven H. Smith & Associates, PLLC
2630 Ridgewood Road, Suite C
Jackson, MS  39216
Tel: 601-987-4800
Fax: 601-987-6600
E-mail: ssmith@shsattorneys.com

*For USA Houston Levee, DST, Fed. R. Civ. P. 19 Necessary Party:*

TIMOTHY W. LINDSAY
KRISTI H. JOHNSON
Ogletree, Deakins, Nash, Smoak & Stewart, PC – Ridgeland
100 Renaissance, Suite 200
1022 Highland Colony Parkway
Ridgeland, MS  39157
Tel.: 601-360-8444
Fax: 601-360-0995
E-mail: tim.lindsay@odnss.com
E-mail: kristi.johnson@odnss.com

/s/ John Alan Doran
JOHN ALAN DORAN, AZ Bar #012112
Sherman and Howard, LLC
201 East Washington Street, Suite 800
Phoenix, AZ  85004-2327
Tel.: 602-240-3032
Fax: 602-240-6600
E-mail: jdoran@shermanhoward.com

*For SEC Accommodator-Windsor Lake, LLC, SEC Accommodator-Twin Oaks, LLC, Oak Hollow-NE Limited Partnership, SEC Accommodator-Spring Lake, LLC, and Pelican Pointe-NE Limited Partnership, Fed. R. Civ. P. 19 Necessary Parties:*

/s/ Edderek Linnel Cole
EDDEREK LINNEL COLE, MS Bar #100444
Forman, Perry, Watkins, Krutz & Tardy,
LLP – Jackson
Post Office Box 22608
Jackson, MS  39225-2608
200 South Lamar Street, Suite 100
Jackson, MS  39201-4099
Tel.: 601-973-8964
Fax: 601-960-8613
E-mail: coleb@fpwk.com

*For Mid-America Capital Partners, L.P. and Mid-America Apartments, L.P., Fed. R. Civ. P. 19 Necessary Parties:*


/s/ Michael J. Bentley
MICHAEL J. BENTLEY, MS Bar #102631
SIMON T. BAILEY, MS Bar # 103925
Bradley, Arant, Boult, Cummings, LLP
Post Office Box 1789
188 East Capitol Street, Suite 400
One Jackson Place
Jackson, MS  39215-1789
Tel.: 601-592-8000
Fax: 601-948-3000
E-mail: mbentley@babc.com
E-mail: sbailey@babc.com


*For RS Cypress Lakes Apartments, LLC (current owner of Cypress Lake Apartments, transferred from Cypress Lake RS, LLC, and Cypress Lake GARG, LLC, Fed. R. Civ. P. 19 Necessary Parties):*


By:    RS CYPRESS LAKES MANAGEMENT, LLC
       A Utah Limited Liability Company
       Its Manager

       By:    _____
              Terry Smith, Manager
              c/o RealSource Property Consulting, LLC
              2089 E. Fort Union Boulevard
              Salt Lake City, Utah 84121